[Cite as *State v. Andrasak*, 194 Ohio App.3d 838, 2011-Ohio-3425.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

THE STATE OF OHIO,

    Appellee,

    v.

ANDRASAK,

    Appellant.

C.A. No.     10CA0050-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     09-CR-0403

DECISION AND JOURNAL ENTRY

Dated: July 11, 2011

Dean Holman, Medina County Prosecuting Attorney, and Russell A. Hopkins, Assistant Prosecuting Attorney, for appellee.

Joseph F. Salzgeber, for appellant.

MOORE, Judge.

{¶1} Appellant, Cheryl L. Andrasak, appeals from the judgment of the Medina County Court of Common Pleas, which ordered as a condition of community control that she have no contact with her husband or son. This court affirms in part and reverses in part.

{¶2} On September 24, 2009, the Medina County Grand Jury indicted Andrasak on one count of permitting drug abuse in violation of R.C. 2925.13(B), a felony of the fifth degree, and one count of trafficking in drugs in violation of R.C. 2923.03(A)(2), 2925.03(A)(1), and 2925.03(C)(1)(a), a felony of the fourth degree.

{¶3} On February 10, 2010, Andrasak pleaded guilty to both counts, and the court ordered a presentence investigation. On March 22, 2010, the trial court sentenced her to five

years of community control, during which she was to have no contact with her codefendants, as well as 180 days in the county jail and a six-month driver's license suspension.

**{¶4}** Andrasak timely filed a notice of appeal. She has raised one assignment of error for our review.

> The trial court abused its discretion and committed plain error affecting the substantial rights of [Andrasak] by imposing, as part of her five-year sentence of community control or probation, the conditions that [she] have no contact with her son and her husband contrary to her fundamental constitutional rights.

**{¶5}** In her assignment of error, Andrasak contends that the trial court abused its discretion and committed plain error by ordering that she have no contact with her husband and son during a five-year term of community control. We agree in part.

**{¶6}** During the March 22, 2010 sentencing hearing, the trial court told Andrasak, "[Y]ou're to have no contact with Howard Williams and Eric Hanning while you're on probation." In its sentencing entry filed on March 25, 2010, the trial court wrote that Andrasak was to have "no contact with codefendants." On April 6, 2010, the trial court filed a nunc pro tunc entry, which stated that Andrasak was to have "no contact with co-defendants, Howard Williams, Jr., Eric Hanning and Nathaniel Andrasak."

### Husband

**{¶7}** When the court told Andrasak at sentencing that she was to have no contact with her husband, Eric Hanning, she did not object. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. Therefore, she forfeited these issues. Forfeiture of her constitutional argument does not, however, foreclose

Andrasak's plain-error argument. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is only to be noticed "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "This Court will apply Crim.R. 52(B) only if it appears on the face of the record that an error was committed, and the result of the trial clearly would have been different but for the alleged error." *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 6, citing *State v. Bock* (1984), 16 Ohio App.3d 146, 150.

{¶8} We recognize that marriage is one of the basic civil and fundamental rights of man, *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, and we do not readily support forced separation of spouses. But see, e.g., *State v. Conkle* (1998), 129 Ohio App.3d 177, 179 (upholding a three-year no-contact order between spouses when a wife was the victim of domestic violence at the hands of her husband). With respect to Hanning, however, there is no evidence in the record that he and Andrasak are married. The only reference to a relationship between the two found in the record is contained in the state's "answer to defendant's demand for discovery." A summary provided in the state's discovery response identified Hanning as Andrasak's boyfriend. It is conceivable that the presentence investigation upon which the court relied in sentencing her contains a reference to the couple's being married. However, neither the state nor Andrasak made the presentence investigation part of the record. Additionally, Hanning and Andrasak do not bear the same last name. This fact is hardly dispositive, but it is more understandable that the trial court might not have assumed or suspected a familial relationship. Because the marital status of Andrasak and Hanning is not in the record before us, we cannot say that an error was committed. *Dent,* 2002-Ohio-4522, at ¶ 6. Therefore, on the state of the

record, Andrasak has failed to demonstrate plain error with respect to the no-contact order with Eric Hanning.

Son

**{¶9}** The United States Supreme Court has "recognized on numerous occasions that the relationship between parent and child is constitutionally protected." *Quilloin v. Walcott* (1978), 434 U.S. 246, 255. The Supreme Court of Ohio has similarly recognized the importance of the relationship between parent and child. *In re Murray* (1990), 52 Ohio St.3d 155, 157. Our resolution of the assignment of error with respect to Andrasak's son, Nathaniel Andrasak, does not, however, turn on the constitutional importance of the mother-son relationship.

**{¶10}** Instead, we note the discrepancy between the sentencing transcript, which does not mention her son, the sentencing journal entry, which refers only to "co-defendants," and the nunc pro tunc sentencing entry in which Nathaniel's name finally appears along with the two codefendants whom the trial court specifically mentioned during the sentencing hearing. The trial court's procedure in this respect raises two concerns: (1) a defendant's right to be present at sentencing and (2) the proper use of a nunc pro tunc entry.

**{¶11}** "Crim.R. 43(A) requires that a criminal defendant be present for sentencing. 'When a sentence pronounced in open court is subsequently modified and the judgment entry reflects the modification, the modification must have been made in the defendant's presence.' " *State v. Mullens*, 9th Dist. No. 23758, 2007-Ohio-5678, at ¶ 7, quoting *State v. Hodges* (June 22, 2001), 1st Dist. No. C-990516. As previously noted, during the sentencing hearing the trial court informed Andrasak that she was to have no contact with Howard Williams and Eric Hanning while subject to community control. The nunc pro tunc entry included a modification, the addition of her son's name. The trial court did not hold a hearing for this modification, and there

was no opportunity for Andrasak to object to the modification. Accordingly, the trial court sentenced Andrasak outside her presence.

{¶12} Moreover, the sentence modification presents an inappropriate use of a nunc pro tunc entry. A trial court may properly issue a nunc pro tunc entry "as an exercise of its inherent power, to make its record speak the truth." *State v. Greulich* (1988), 61 Ohio App.3d 22, 24. "It is used to record that which the trial court did, but which has not been recorded." Id. The proper use of such an entry, therefore, is to reflect only 'what the court actually decided, not what the court might or should have decided.'" *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, at ¶ 19, quoting *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, at ¶ 14. In this case, what the court actually decided was stated during the sentencing hearing, namely that Andrasak was to have no contact with Howard Williams and Eric Hanning. The nunc pro tunc entry that added her son's name to the no-contact list was not proper because it did not accurately reflect what the court decided. Because a nunc pro tunc entry may not be used to reflect what the court believes it *should have* decided, the addition of Nathaniel Andrasak's name to the no-contact list was improper.

{¶13} Accordingly, Andrasak's assignment of error is overruled with respect to Eric Hanning and sustained with respect to Nathaniel Andrasak.

{¶14} The judgment of the Medina County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

_____

BELFANCE, P.J., concurs.

CARR, J., concurs in judgment only.

CARR, Judge, concurring in judgment only.

**{¶15}** I concur in the majority's judgment but I am compelled to write separately to emphasize our concerns regarding the imposition of a condition of probation that may infringe on a married couple's fundamental right to companionship with one another. Under the specific facts of this case, however, I agree that this court has no choice but to affirm in part, given the lack of evidence in the record that Andrasak and Hanning are married.

**{¶16}** While Andrasak may have other remedies, such as postconviction relief, she has no grounds for relief on direct appeal in the absence of any evidence that Hanning is her husband.