[Cite as *State v. Bakhshi*, 2014-Ohio-1268.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee             :          C.A. CASE NO.    25585

v.                                     :          T.C. NO.    12CRB6319

JAY P. BAKHSHI                         :             (Criminal appeal from
                                                      Municipal Court)
    Defendant-Appellant            :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____28th_____ day of ____March____, 2014.

. . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1} Jay Bakhshi was found guilty after a jury trial in the Dayton Municipal Court of gambling, in violation of R.C. 2915.02(A)(2). The trial court sentenced him to 180 days in jail, all of which were suspended, and one year of non-reporting community control, with a condition that Bakhshi complete 500 hours of community service

within approximately 15 weeks. The court imposed a $1,000 fine and ordered him to pay court costs, including jury costs.

{¶ 2} Bakhshi appeals from his conviction, claiming that his conviction was based on insufficient evidence and was against the manifest weight of the evidence, that he was denied effective assistance of counsel, that he was the victim of selective prosecution, and that the trial court abused its discretion at sentencing. For the following reasons, the portion of the trial court's sentence that required community service as a condition of community control will be reversed, and the matter will be remanded for resentencing on that condition; in all other respects, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} The State's evidence at trial established the following facts.

{¶ 4} Bakhshi's friend, co-defendant Thomas Boscarino, rented the IUE-CWA Union Hall on Woodman Avenue in Dayton to hold a fundraising event for Boscarino's adult son, Nikolaos, on July 28, 2012. Nikolaos had been involved in a physical altercation with police officers, resulting in legal and medical expenses. Boscarino did not rent the facility for use by a non-profit charitable organization, as recognized by the IRS.

{¶ 5} On the day of the event (July 28), the Dayton Police Department received a complaint that Boscarino would be holding an event involving illegal gambling and illegal liquor sales at the IUE Hall. Lieutenant Stivers called Sergeant Gary Lowe, who then contacted Detective Raymond St. Clair and asked him (St. Clair) to contact Detectives Thomas Oney and Doug George to see if they would conduct an undercover investigation. Detectives Oney and George agreed to participate in the investigation, and they reported to

work at 8:00 p.m.  Detective Oney briefly conducted surveillance of the IUE Hall while Detective George investigated whether the IUE Hall had a valid liquor permit for that day.

{¶ 6}    At approximately 10:00 p.m., Detectives Oney and George went to the IUE Hall, in plain clothes, to enter the facility.  Outside was a sign advertising, "Sat 28 July 5 PM to MID, $15 donation, all you can eat pizza and beer." The detectives paid the requested $15 donation and were provided an orange wristband and cup.  Upon entering, they went to the bar area near the kitchen, where the detectives obtained beer (for no additional cost) and Detective George got a shot of Jack Daniel's for $2.  The detectives then got pizza from another table.

{¶ 7}    The detectives noticed people playing cards on the other side of the IUE Hall.  They went over and saw that the individuals were playing Texas Hold 'Em, a "standard poker game."  Bakhshi was the dealer for the table.  As the games were played, people placed bets with poker chips in accordance to Texas Hold 'Em rules.  Once the hand was completed, Bakhski raked in the chips and counted them.  Bakhshi took a small percentage of the chips from the table, placed them in a small plastic container that was sitting on a seat to his left, and then gave the remainder of the "pot" to the winning player. The detectives recognized that the amount taken by Bakhshi was a "cut," a portion retained by the "house" as profit for whoever is operating the game.

{¶ 8}    After watching a few hands, Detective Oney went back to the kitchen area and purchased $25 of poker chips.  Oney received black and white poker chips, which were worth $1 (white) and $5 (black).  When a seat opened up at Bakhshi's table, Oney began to play.  He asked Bakhshi what the cut was, and Bakhshi indicated it was about ten percent,

meaning the house would retain ten percent of the value of the pot once the hand was completed. After losing all of his chips, Oney returned to the bar area and purchased another $25 worth of chips.

{¶ 9} Play at the table stopped when Boscarino stepped onto a small stage and gave a short speech. During his talk, Boscarino indicated that there were two Dayton police officers at the event. Oney testified that people started staring at him and Detective George.

{¶ 10} After Boscarino's speech concluded, Detective Oney contacted his supervisor and informed him that his and Detective George's identities had been compromised, that beer was being sold, and that Texas Hold 'Em was being played with a cut. Players resumed playing poker, and Detective George purchased $40 worth of poker chips from Bakhshi and sat down to play. At this time, Bakhshi brought out a sign describing the game and method of donation. Bakhshi also began asking the players if it were alright if they contributed a ten percent donation. Detective Oney also resumed playing until uniformed officers and other detectives arrived.

{¶ 11} When uniformed police officers arrived, the IUE Hall was "locked down" and Detective George identified some of the people that he observed engaging in illegal activity. Numerous items were collected pursuant to a search warrant. Those items included poker chips, cards, kegs of beer, bottles of liquor, a television, a computer, invoices, flyers, money totaling $2,561.25, a vial of Miller Lite beer and a vial of Jack Daniel's, cups, and wrist bands.

{¶ 12} Bakhshi was arrested and charged by complaint with gambling. Upon motions by Bakhshi and the State, the case was consolidated with those of his five

co-defendants.[1]  (The case of one co-defendant was later severed due to scheduling issues.) After a jury trial on November 8 and 9, 2012, Bakhshi was convicted of gambling, in violation of R.C. 2915.02(A)(2).  The court held a sentencing hearing on January 3, 2013, at which time it imposed a suspended 180-day jail term, one year of non-reporting community control (with the condition that he complete 500 hours of community service), a $1,000 fine, and court costs.  The trial court's judgment entry, filed on January 7, 2013, included an additional condition that the 500 hours of community service be performed by April 19, 2013.

{¶ 13}  Bakhshi appeals from his conviction, raising five assignments of error.

## II.  Sufficiency and Manifest Weight of the Evidence

{¶ 14}  Bakhshi's first and second assignments of error claim that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 15}   "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."  *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).  A guilty verdict will not be disturbed on appeal unless "reasonable

---

[1]  Bakhshi was tried jointly with Thomas Boscarino, Kenneth Wise, Ryan Hilgeman, and Demitria Boscarino.

minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 16} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 18} Bakhshi was convicted of gambling, in violation of R.C. 2915.02(A)(2).

That statute provides that no person shall "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance." R.C. 2915.01(E) defines "game of chance conducted for profit" to mean "any game of chance designed to produce income for the person who conducts or operates the game of chance, but does not include bingo." "Game of chance" means "poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo." R.C. 2915.01(D). For purposes of R.C. 2915.02(A)(2), a person facilitates a game of chance conducted for profit if the person in any way knowingly aids in the conduct or operation of any such game, including, without limitation, playing any such game. R.C. 2915.02(B).

{¶ 19} R.C. 2915.02(D) provides an exception to gambling conducted by non-profit charitable organizations, as recognized by the IRS, under certain circumstances; however, the evidence at trial established that the fundraising event was not conducted by a non-profit charitable organization and that this exception does not apply.

{¶ 20} Bakhshi argues that his conviction for gambling should be reversed for three reasons. First, he asserts Texas Hold 'Em is not a "game of chance." R.C. 2915.01(D) defines poker as a "game of chance," and both Detective Oney and Detective George (and defense witness Roger Wells) testified that Texas Hold 'Em is a form of poker. Although there was some evidence that skillful bluffing plays a role in winning poker hands, the State provided sufficient evidence that the card game at issue was a "game of chance," i.e., a form of poker, and the jury did not lose its way in reaching that conclusion.

{¶ 21} Second, Bakhshi claims that there was no evidence that he was going to

personally profit from the fundraiser, because any profits from the fundraiser would go to Boscarino's son.

{¶ 22} Upon review of the record, the State presented evidence that the Texas Hold 'Em table was a "game of chance conducted for profit," i.e., it was "designed to produce income for the person who conducts or operates the game of chance." *See* R.C. 2915.01(E). Detectives Oney and George testified that ten percent of the poker pot went to the "house" at the end of each hand. Bakhshi was the dealer at the table, and at the end of each hand, Bakhshi raked in the chips, took a ten percent cut, and provided the remaining chips to the winner of the hand. The evidence established that the poker table was designed to produce income for the organizer of the fundraiser, Boscarino, and that Bakhshi engaged in the conduct that facilitated the poker playing by being the dealer for the table. The facts that Bakhshi did not personally profit from the table or that Boscarino intended to use those profits to help his son financially do not compel the conclusion that Bakhshi's conviction was based on insufficient evidence or was against the manifest weight of the evidence.

{¶ 23} Third, Bakhshi asserts that R.C. 2915.02(D) was not intended to apply to the July 28 event, as a one-time fundraiser. He emphasizes the 1973 Legislative Service Committee's commentary that "[t]his section is aimed at suppressing the business of gambling, and prohibits gambling for profit, as well as various peripheral activities which support it. It does not prohibit gambling (other than bookmaking) which is not conducted for profit." The comments note that the prohibitions in R.C. 2915.02 reach "not only the bookie, the casino operator, and the manager of a floating crap game, but also the clerk of the handbook, the dealer, and the person who places a bet with a bookie or plays an illicit

game or scheme."

{¶ 24} Additional comments by the Legislative Service Committee further illustrate, however, that the reach of R.C. 2915.02 extends beyond gambling business operations. It reads, in part:

> The penny-ante poker game in one's own home with friends, the dime-a-hole Saturday golf match, and the office football pool are not prohibited, unless some profit is taken other than the gain accruing to a winner. If a nominal charge is made for admission or for a seat in the game, or *a small percentage of the pot or pool is taken*, or the house takes an edge in the odds, then profit enters the picture.

(Emphasis added.)

{¶ 25} The evidence at trial reveals that Boscarino organized the July 28, 2012 event to be a fundraiser for his son's legal and medical expenses. Although there is no evidence that Boscarino conducted similar gambling operations on an ongoing basis, the Texas Hold 'Em table fell within the scope of R.C. 2915.02 when a percentage of the pot was taken by Bakhshi, the dealer, at the poker table.

{¶ 26} Bakhshi's gambling conviction was based on sufficient evidence and was not against the manifest weight of the evidence. The first and second assignments of error are overruled.

### III. Ineffective Assistance of Counsel: Speedy Trial

{¶ 27} In his third assignment of error, Bakhshi states that he "was deprived of effective assistance of counsel." Bakhshi claims that his trial counsel rendered ineffective

assistance when he failed to file a motion to dismiss on speedy trial grounds.

{¶ 28} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 29} The right to a speedy trial is guaranteed by the United States and Ohio Constitutions. *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). Ohio's speedy trial statute, R.C. 2945.71, "was implemented to incorporate the constitutional protection of the right to a speedy trial" provided in the United States and Ohio Constitutions. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996). As such, that statute must be strictly construed against the State. *Id.*

{¶ 30} A defendant can establish a prima facie case for a speedy trial violation by demonstrating that the trial was held past the time limit set by statute for the crime with which the defendant is charged. *State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-4549, ¶ 15. "If the defendant can make this showing, the burden shifts to the State to establish that some exception[s] applied to toll the time and to make the trial timely. If the State does not meet its burden, the defendant must be discharged. R.C. 2945.73."

*Id.*

{¶ 31}  Bakhshi was charged with a first-degree misdemeanor.  A person charged with a first-degree misdemeanor or another misdemeanor for which the penalty is imprisonment for more than 60 days must be brought to trial within 90 days after the person's arrest or service or summons.  R.C. 2945.71(B)(2).  When the accused is held in jail in lieu of bail on the pending charge, each day is counted as three days.  R.C. 2945.71(E).  However, Bakhshi was released on bond the same day that he was arrested.  Accordingly, the triple-count provision is inapplicable in this case.

{¶ 32}  The time within which a defendant must be brought to trial may be extended for the reasons specifically enumerated in R.C. 2945.72.  *State v. Brewer*, 2d Dist. Montgomery Nos. 22159, 22160, 2008-Ohio-2715, ¶ 37, citing *State v. Palmer*, 84 Ohio St.3d 103, 702 N.E.2d 72 (1998).  Permissible reasons for extending the trial date include "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused" and "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"  R.C. 2945.72(E) and (H).

{¶ 33}  Bakhshi was arrested on July 29, 2012, and the trial was originally scheduled for September 13, 2012.  The trial date was reset by the court, sua sponte, to October 17, 2012, due to (1) an older case that took precedence and went forward with a jury on September 13, and (2) the parties made the court aware that the consolidated cases would require a three-day trial, instead of the two days that are normally required.

{¶ 34}  The case was again continued on October 2, 2012, when the trial court

granted the State's motion for a continuance because laboratory results were still pending. Bakhshi subsequently filed a memorandum opposing the State's motion. He noted that he did not have an opportunity to respond to the State's motion, and he argued that the basis for the State's motion was unsubstantiated. Bakhshi stated that there was no documentation from the Miami Valley Regional Crime Lab supporting the State's reason for the continuance, and the discovery received from the State did not include a Crime Lab request form. Upon reconsideration on October 11, the trial court found the State's request to be reasonable and again granted the continuance. The trial court rescheduled the trial date for November 8, 2012.

{¶ 35} Bakhshi claims that his speedy trial rights were violated when the trial court granted, over his objection, the State's October 2, 2012 motion for a continuance due to a back-up at the laboratory. The State responds that Bakhshi's speedy trial time was extended by several tolling events, including Bakhshi's request for discovery, his motion to consolidate his case with those of his co-defendants, his request for a bill of particulars, the trial court's sua sponte continuance of the September trial date, and the State's request for a continuance due to a delay in obtaining laboratory results.

{¶ 36} We agree with the State that Bakhshi's speedy trial rights were not violated when he was brought to trial on November 8, 2012. Bakhshi filed several motions that tolled the speedy trial time. For example, he filed a demand for discovery on August 3, 2012, and a motion for a bill of particulars on August 14, 2012. A defendant's demand for discovery or a bill of particulars is a tolling event, pursuant to R.C. 2945.72(E). *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159; *State v. Dankworth*, 172 Ohio

App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 45 (2d Dist.). The State did not respond to the bill of particulars until October 12, 2012, and it is unclear when the State responded to the demand for discovery. Even assuming that the State's response to the request for a bill of particulars was unreasonably slow, a two-week tolling of Bakhshi's speedy time – the time needed for his trial to be timely – would not have been unreasonable.

{¶ 37} In addition, prior to the expiration of Bakhshi's speedy trial time, the State moved for – and the trial court granted – a continuance of the trial date on the ground that "[t]he Lab is backed up and results are not yet available." We find no fault with the trial court's conclusion that a continuance for purposes of awaiting laboratory results was "reasonable and for good cause," or with a 13-day delay of the trial date (from October 26 to November 8) on that basis. Given this conclusion, we need not address the other alleged bases for tolling the speedy trial time.

{¶ 38} In summary, Bakhshi's right to a speedy trial was not violated when he was brought to trial on November 8, 2012. Consequently, his trial counsel did not provide ineffective assistance when counsel failed to move for a dismissal on speedy trial grounds.

{¶ 39} Bakhshi's third assignment of error is overruled.

## IV. Selective Prosecution

{¶ 40} In his fourth assignment of error, Bakhshi claims that he was subject to selective prosecution. His complaint appears to be more one of targeted enforcement, rather than constitutionally-prohibited selective prosecution.

{¶ 41} In general, the decision whether to prosecute a criminal offense is left to the discretion of the prosecutor. *State v. Turner*, 192 Ohio App.3d 323, 330, 2011-Ohio-393,

949 N.E.2d 57 (2d Dist.), citing *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The prosecutor's decision is entitled to a "strong presumption of regularity," and a defendant must do more than simply show that others who are similarly situated were not prosecuted. *Id.*, citing *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 533, 709 N.E.2d 1148 (1999). A defendant claiming selective prosecution

> "'bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'" *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81, 407 N.E.2d 15, quoting *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211.

*State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 44.

{¶ 42} Bakhshi asserts that the July 28 fundraising event was targeted by the police, because the purpose of the event was to raise money for Boscarino's son, Nikolaos, who had accumulated legal and medical expenses arising out of an altercation with a police officer at Taggart's bar in Dayton.

{¶ 43} Sergeant Lowe testified that he was called by Lieutenant Stivers because Stivers's confidential informant had reported a fundraiser for the Boscarino defense. The primary concern was illegal alcohol sales and gambling. Stivers also told Lowe that there

was a court order that a video of Nikolaos's arrest not be shown, so "if it was shown then that would be another violation." The record does not reflect the identity of Stivers's confidential informant, and it is unclear whether there was a filed court order precluding the showing of the arrest video.

{¶ 44} The record does not support Bakhshi's claim of selective prosecution or targeted enforcement (even assuming the latter is prohibited). Bakhshi does not attempt to identify other individuals who held a similar event, with illegal gambling and distribution of alcohol through "donations", but were not prosecuted. Nor is there any evidence that the prosecution was based on any constitutionally impermissible consideration. In addition, the testimony of Oney, George, St. Clair, and Lowe at trial reflects that none of the police officers who conducted the investigation of Boscarino's fundraiser was involved in the events regarding Nikolaos at Taggart's, and none of the officers had a close association with the officer who was allegedly injured by Nikolaos. We can glean nothing from the record that the decisions to arrest and prosecute Bakhshi were acts of intentional and purposeful discrimination.

{¶ 45} Bakhshi's fourth assignment of error is overruled.

### IV. Sentencing

{¶ 46} Bakhshi's fifth assignment of error claims that the trial court abused its discretion in sentencing him. He states that he is a business man without a history of "persistent criminal activity," that the event was a one-time event, that his intent was simply to help his friend, Boscarino, and that he did not commit the worst form of the offense. Bakhshi claims that his sentence was excessive under the circumstances.

**{¶ 47}** When sentencing for a misdemeanor offense, the trial court is guided by the "overriding purposes of misdemeanor sentencing," which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.21(A); *State v. Collins*, 2d Dist. Greene No. 2012-CA-2, 2012-Ohio-4969, ¶ 9. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). The sentence imposed must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B); *Collins* at ¶ 9.

**{¶ 48}** "A trial court is also required to consider the nature and circumstances of the offense, whether there was a history of persistent criminal activity or character that reveals a substantial risk of the offender committing another offense, and numerous other factors related to the offender and the offense. R.C. 2929.22(B). However, in misdemeanor sentencing, there is no requirement that a trial court specifically state its reasons for imposing the sentence that it does on the record. *State v. Jackson*, 2d Dist. Montgomery No. 20819, 2005-Ohio-4521, ¶ 16, citing *State v. Harpster*, 5th Dist. Ashland No. 04COA061, 2005-Ohio-1046." *Collins* at ¶ 10. "If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary." *State v. Johnson*,

2d Dist. Greene No. 04-CA-126, 2005-Ohio-6826, ¶ 9.

{¶ 49} We review misdemeanor sentences for an abuse of discretion. *State v. Peagler*, 2d Dist. Montgomery No. 24426, 2012-Ohio-737, ¶ 3.

{¶ 50} Pursuant to R.C. 2929.24(A)(1) and R.C. 2929.28(A)(2)(i), a trial court may impose a sentence of up to 180 days in jail and a fine of up to $1,000 for a misdemeanor of the first degree. R.C. 2929.27(A)(3) allows the court to impose a term of community service of up to 500 hours for a first-degree misdemeanor. The trial court may impose a jail term under R.C. 2929.24, suspend all or a portion of the jail term imposed, and place the offender under a community control sanction or combination of community control sanctions authorized under section 2929.26, 2929.27, or 2929.28 of the Revised Code. R.C. 2929.25(A)(1)(b).

{¶ 51} At sentencing, the State argued that Bakhshi "understood what he was doing was wrong." The prosecutor commented that Bakhshi's "attitude" changed after Boscarino's speech, when Boscarino stated that police officers were present, and that Bakhshi continued with the illegal behavior after the speech. The State argued that there needed to be a "serious consequence" for Bakhshi's actions.

{¶ 52} In response, defense counsel told the trial court that Bakhshi's sole purpose in helping with the July 28 event was to help the family of a friend. Counsel stated that "[h]is error in judgment, if there is one, was in helping his friend and getting caught up in that whole thing." Counsel informed the court that Bakhshi led a law-abiding life and is a productive member of society. When asked by the court, Bakhshi stated that he is self-employed and that he has owned his own construction company for "going on four

years." Bakhshi responded affirmatively when asked if he could make a decent living.

{¶ 53} The trial court orally imposed a suspended 180-day jail term, one year of non-reporting community control (with the condition that he complete 500 hours of community service), a $1,000 fine, and court costs, including jury costs. The trial court's judgment entry, filed on January 7, 2013, reflected that sentence and included an additional condition that the 500 hours of community service be performed by April 19, 2013.[2]

{¶ 54} From the record on appeal, it is difficult to reconcile the circumstances of Bakhshi's offense with the imposition of the maximum $1,000 fine and maximum 500-hour community service requirement. Bakhshi was not the organizer of the event, and his involvement was limited to being the dealer at the Texas Hold 'Em table, an act he performed for free on a one-time basis for his friend. Unlike his co-defendant Boscarino, there is no evidence that Bakhshi aimed to profit from the event or had any control over how the profits would be used. Nevertheless, given the financial implications of a gambling offense, we cannot conclude that the trial court abused its discretion in imposing a $1,000 fine. In addition, we cannot conclude that the jail term, which was suspended in its entirety, was unreasonable.

{¶ 55} The trial court did err when it ordered Bakhshi to complete 500 hours of community service by April 19, 2013. The trial court sentenced Bakhshi on January 3, 2013 to 500 hours of community service. In the judgment entry filed on January 7, 2013, it

---

[2] The trial court also did not inform Bakhshi at sentencing of the consequences of violating community control. The judgment entry states, however, that a violation of community control may result in a longer time under the same control, a more restrictive community control sanction, and/or a combination of community control sanctions, including up to 180 days in jail.

required him to complete his 500 hours of community service within 15 weeks of that date (which comes to 33.33 hours per week for 15 weeks, or 12.5 weeks at 40 hours per week).

**{¶ 56}** A defendant has a right to be present at every stage of a criminal proceeding, including sentencing. Ohio Constitution, Article I, Section 10; Crim.R. 43(A); *State v. Walker*, 2d Dist. Clark Nos. 2013 CA 8, 2013 CA 9, 2014-Ohio-526, ¶ 22. The amendment or modification of a defendant's sentence outside of a defendant's presence violates a defendant's right to notice and to due process. *See State v. Haymon*, 5th Dist. 2005 CA 163, 2006-Ohio-3296, ¶ 14, citing *Cleveland v. Clemons*, 90 Ohio App.3d 212, 628 N.E.2d 141 (8th Dist.1993). Thus, "a trial court errs when it issues a judgment entry imposing a sentence that differs from the sentence pronounced in the defendant's presence." *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 70 (2d Dist.), citing *State v. Aliane*, 10th Dist. Franklin No. 03AP-840, 2004-Ohio-3730, ¶ 8; *see State v. Andrasak*, 194 Ohio App.3d 838, 2011-Ohio-3425, 958 N.E.2d 594 (9th Dist.) (nunc pro tunc entry that modified "no contact" condition of community control violated defendant's rights under Crim.R. 43(A)).

**{¶ 57}** Bakhshi was not informed at his sentencing of the condition that he complete 500 hours of community service by April 19, 2013. The addition of a specific time limitation in the trial court's judgment entry violated his right to notice and due process. We therefore conclude that the trial court erred in its imposition of community service as a condition of Bakhshi's community control. Accordingly, the community service condition imposed in the judgment entry is reversed, and the matter is remanded for resentencing on this condition.

**{¶ 58}** Bakhshi's fifth assignment of error is overruled in part and sustained in part.

### V.   Conclusion

**{¶ 59}** The portion of the trial court's judgment that required community service as a condition of community control will be reversed, and the matter will be remanded for resentencing on that condition.   In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.


Copies mailed to:

Amy B. Musto
Robert Alan Brenner
Hon. Carl Sims Henderson