[Cite as *State v. Johnson*, 2022-Ohio-1782.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29336 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-2619/4 |
| | : | |
| JACK JOHNSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of May, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

P.J. CONBOY, II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Jack Johnson pled guilty in the Montgomery County Court of Common Pleas to receiving stolen property, a misdemeanor of the first degree. The trial court sentenced him to 180 days in jail. Johnson appeals from his conviction, claiming that the trial court erred in sentencing him to a maximum jail term. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the presentence investigation report (PSI), at approximately 10:30 a.m. on March 6, 2021, Jeffrey Shepherd contacted law enforcement to report that someone had broken into the detached garage of his recently-deceased father's residence on Calumet Lane. The responding deputies were unable to enter the garage because it was being held closed from the inside. The officers noticed that a large padlock system on the pedestrian door had been pried and cut.

{¶ 3} A surveillance camera captured some of the events from that morning. At approximately 8:30 a.m., a woman in a long coat walked into view. Someone else then used a black winter hat to cover the camera, but it fell off after about 30 minutes. After the fall, the video showed three individuals – the woman in a long coat and two men – entering and removing items from the garage and taking them to Johnson's residence next door.

{¶ 4} The deputies reviewed the video and went to Johnson's residence; they were greeted by a woman, who retrieved Johnson. He told the deputies that he had been working on his front porch since 9:00 a.m. and had just gone inside. He also said that

he had not seen anything suspicious and had been watching the Shepherd residence closely since his neighbor's death.

{¶ 5} Shepherd informed the deputies that the woman in the long coat (later identified as Johnson's son's girlfriend) had left the back of Johnson's home, and the deputies went to locate her. The deputies found her, and she ultimately admitted that the stolen items were located in the back bedroom of Johnson's home.

{¶ 6} The deputies returned to Johnson's home and confronted him about having stolen property at his residence. Johnson responded, "bullsh*t, let's go see," and walked deputies through his home and backyard, identifying items that did not belong to him. Officers photographed the stolen property and returned it to Shepherd; only one item, a propane heater, remained missing. Deputies determined that Johnson's son and the son's girlfriend (the woman who greeted them), both of whom lived with Johnson, and another man were suspects in the breaking and entering and theft.

{¶ 7} On August 30, 2021, Johnson was indicted for receiving stolen property ($7,500 or more, but less than $150,000), a fourth-degree felony. He subsequently pled guilty to receiving stolen property as a first-degree misdemeanor, a lesser-included offense, and the court ordered a presentence investigation. After reviewing the PSI and considering statements by Johnson and his attorney, the trial court imposed 180 days in the Montgomery County Jail. Johnson received one day of jail time credit.

{¶ 8} Johnson challenges his sentence on appeal.

## II. Review of Johnson's Maximum Jail Sentence

{¶ 9} In his sole assignment of error, Johnson claims that community control

should have been considered in lieu of a jail sentence, and even if a jail sentence were found to be appropriate, the evidence did not support a maximum jail term. He emphasizes that he did not commit a theft, he took responsibility for his actions, the offense was non-violent, no one was hurt, and he did not commit the most serious form of the offense.

{¶ 10} When sentencing for a misdemeanor offense, the trial court is guided by the "overriding purposes of misdemeanor sentencing," which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A); *State v. Bakhshi*, 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, ¶ 47. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). The trial court's sentence must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B); *State v. Collins*, 2d Dist. Greene No. 2012-CA-2, 2012-Ohio-4969, ¶ 9. Unless a mandatory jail term is required, a trial court has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing. R.C. 2929.22(A).

{¶ 11} R.C. 2929.22(B)(1) identifies seven factors for the trial court to consider in determining the appropriate sentence. Stated generally, those factors include the nature

and circumstances of the offense(s); whether the offender has a history of persistent criminal activity and is likely to commit another offense; whether there is a substantial risk that the offender will be a danger to others; whether the victim's circumstances made the victim particularly vulnerable to the offense or made the impact of the offense more serious; and factors relating to the offender's military service, if any. *See* R.C. 2929.22(B)(1)(a)-(g). The court may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(2). In addition, the court must consider "any relevant oral or written statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor." R.C. 2929.22(D)(1).

{¶ 12} R.C. 2929.22(C) further requires the trial court to consider the appropriateness of community control before imposing a jail term. The court may impose the maximum jail term "only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." *Id.*

{¶ 13} The trial court is not required to state on the record its reasons for the particular sentence it imposes. *Collins* at ¶ 10. "If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary." *State v. Johnson*, 2d Dist. Greene No. 2004-CA-126, 2005-Ohio-6826, ¶ 9.

{¶ 14} We review misdemeanor sentences for an abuse of discretion. *State v.*

*Peagler*, 2d Dist. Montgomery No. 24426, 2012-Ohio-737, ¶ 3; *Bakhshi,* 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, at ¶ 50. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 15} At sentencing, the trial court heard from defense counsel, who emphasized that the video of the incident showed that Johnson did not enter and take items from Shepherd's garage. Counsel stated that Johnson's involvement, at most, consisted of storing the stolen items on his own property. Defense counsel asserted that Johnson had taken responsibility for his conduct and that community control sanctions with monitored time would be sufficient and would not demean the seriousness of the conduct.

{¶ 16} When asked if he had any anything to say, Johnson told the court, "I didn't know nothing about it. I didn't know that they were – it'd even been broke into until later on." During his presentence interview, Johnson had similarly denied knowing about the theft or how the stolen items came to be on his property; he expressed regret for admitting to the charge "when he had no knowledge of what happened."

{¶ 17} Prior to imposing sentence, the court stated that it had reviewed the PSI and that it did not believe Johnson's version of the events. The court also noted that Johnson had "an extremely lengthy" criminal record involving both felonies and misdemeanors and that he had "not been successful on supervision." The court told Johnson that, "considering all the factors I'm required to consider on a misdemeanor sentence, I'm going to sentence you to 180 days of local jail time," which was the maximum jail term for a first-degree misdemeanor. *See* R.C. 2929.24(A)(1).

{¶ 18} Johnson was 59 years old at sentencing. He had five prior felony convictions for operating a vehicle while under the influence (OVI) (2002, 2009, 2017), attempted carrying a concealed weapon (2006), criminal recklessness (2007), and drug charges (2006, 2009). In addition, Johnson had 15 prior misdemeanor offenses between 1992 and 2014, plus 17 traffic convictions since 1984. Most of the misdemeanor offenses were related to substance abuse (multiple offenses of OVI, public intoxication, open container violation, disorderly conduct, etc.), but also included improper handling of a firearm, trespassing, and assault. As a result of his convictions, Johnson had received prior jail and prison terms. Johnson most recently was released from prison in 2019.

{¶ 19} Johnson was not incarcerated during the pendency of this case, and the PSI reflects that Johnson reported to a probation officer as instructed during his pretrial supervision. However, a urinalysis conducted on November 24, 2021 tested positive for methamphetamine; Johnson denied using methamphetamine, could not explain how it got in his system, and denied the need for treatment. In addition, five days before sentencing in this case, Johnson was arrested and charged with felonious assault (deadly weapon); Johnson reportedly shot at the victim's vehicle while he was backing out of Johnson's driveway following an argument. The trial court could have reasonably concluded that Johnson's conduct while on supervision and his criminal history weighed heavily against a community control sentence and warranted a significant jail term.

{¶ 20} In addition, although the record indicates that Johnson did not actively remove items from Shepherd's father's residence, the trial court apparently did not believe Johnson's claim that he had no knowledge of the theft or the presence of stolen items on

his property. This was not unreasonable, particularly given that the theft occurred next door, deputies responded within a couple of hours of the theft, stolen items were located in multiple places at Johnson's residence, and Johnson was inside his home when the deputies arrived, along with his son's girlfriend, who apparently had been involved in the breaking and entering and theft.

{¶ 21} Upon review of the record, we cannot conclude that the trial court's 180-day jail sentence was an abuse of discretion. Accordingly, Johnson's assignment of error is overruled.

### III. Conclusion

{¶ 22} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
P.J. Conboy, II
Hon. Mary Katherine Huffman