[Cite as *State v. Adkins*, 2020-Ohio-3296.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-45 |
| | : | |
| v. | : | Trial Court Case Nos. 2019-CRB-429 |
| | : | and 2019-CRB-583 |
| TIMOTHY J. ADKINS | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of June, 2020.

. . . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, Assistant Prosecuting Attorney, City of Springfield Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Road, Trotwood, Ohio 45426
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Timothy J. Adkins appeals from a judgment of the Clark County Municipal Court, which found him guilty of domestic violence, a fourth-degree misdemeanor, menacing, a fourth-degree misdemeanor, and two counts of violating a protection order or consent agreement, first-degree misdemeanors.   The trial court merged the menacing count into the domestic violence count and sentenced Adkins for the domestic violence and two counts of violating a protection order.

**{¶ 2}**  Any error regarding the finding of guilt for menacing was harmless beyond a reasonable doubt due to the merger.   Adkins was not denied ineffective assistance of trial counsel, and the trial court did not abuse its discretion regarding Adkins's sentence. The trial court's judgment will be affirmed.

### Facts and Procedural History

**{¶ 3}** Adkins, while intoxicated, came home late at night and fought with his wife, Christa.[1]   His children, who were two young adults and two younger children, were also home during the incident.   Evidently as a result of lingering animus concerning a previous domestic violence conviction, Adkins made the following threat toward Christa:

> * * * [H]e told me that he had thought and thought about how to get rid of me.   He said he had spent a lot of money and had been working on it for months * * * and had paid people to get rid of me.   He said they, he had been in Kentucky and these people told him that it was all taken care of and he didn't need to worry at this point and so this is why he was telling me and that he had his revenge and he said he was really excited and it was going

---

[1] For clarity, the appellant will be referred to as "Adkins" and his wife will be referred to as "Christa."

to be great and he was clapping his hands and laughing.

{¶ 4} Christa further testified that Adkins "threatened to kill [her] repeatedly that night." Christa testified that she took the threats "very seriously," and that as a result of the threats she "was afraid." During the course of the fight, Adkins knocked a hole in a wall, threw a microwave onto the floor, and destroyed Christa's cell phone and glasses. As a result of the threats, Adkins was charged with domestic violence in violation of R.C. 2919.25(C) and menacing in violation of R.C. 2903.22(A), both fourth-degree misdemeanors. The Crim.R. 4 complaint as to each count stated the following: "[T]he Defendant Timothy Adkins did knowingly make threats to his wife Christa Adkins saying he was going to kill her and made her feel fearful for her life."[2]

{¶ 5} As a result of the described occurrence, Christa obtained an ex parte domestic violence civil protection order under R.C. 3113.31. The order, introduced at trial as Exhibit 14, required Adkins to vacate the marital home, to have no contact with Christa, and not to cause or encourage another person to do any act prohibited by the order. Adkins was served with the order the day after its issuance. A little over two weeks later, Adkins's mother delivered to Christa a letter written by Adkins. The letter informed Christa that Adkins "would give [her] money" and it requested that Christa "drop the charges." After reading the letter, Christa responded by stating she had "heard it before." Adkins's mother retrieved and retained the letter. A few hours later Adkins's mother returned with a second letter written by Adkins. This letter stated "he [did not mean] to hurt his family * * * and he wanted to see [the] kids * * *." After Christa read the

_____

[2] Adkins's 19-year-old daughter became involved in the fight, and Adkins was also charged with domestic violence and assault against his daughter. Adkins was found not guilty of those charges.

letter, Adkins's mother once again retrieved and retained the letter. As a result of the two letters, Adkins was charged with two counts of violating a protection order in violation of R.C. 2919.27(A)(1), each count being a first-degree misdemeanor. The Crim.R. 4 complaint regarding the first letter stated "the defendant violated * * * [the] Order of Protection by writing a letter to the victim and having his elderly mother deliver it." The complaint regarding the second letter stated "the defendant violated [the] Order of Protection * * * by writing a second letter to the victim and having his elderly mother deliver it three hours after the first letter was delivered."

{¶ 6} Following a bench trial, Adkins was found guilty of domestic violence, menacing, and the two counts of violating a protection order.[3] The trial court ordered the merger of the domestic violence and menacing counts; the State elected to proceed on the domestic violence count. Following receipt of a presentence investigation (PSI), the trial court conducted a sentencing hearing. The trial court found that each offense constituted the worst form of the offense. With respect to the domestic violence, the finding was based upon the nature of the threats, the contemporaneously committed property damage, and the involvement of the children. With respect to menacing, the worst-form-of-the-offense finding was based upon Adkins using his mother to deliver the letters. Based upon these determinations, the trial court sentenced Adkins to 30 days on the domestic violence conviction (into which the menacing had been merged) and to 180 days on each protection order violation. The sentences were ordered to be served

---

[3] Adkins and his mother testified that although Adkins wrote the letters, he did not know his mother was going to deliver them to Christa. There was a text message introduced at trial from Adkins to a brother-in-law which contradicted this assertion. The trial court obviously concluded that Adkins caused his mother to deliver the letters.

consecutively, but 180 days were suspended, leaving a jail term of 210 days. Additionally, fines and court costs were imposed and Adkins was placed on intensive probation supervision upon his release from jail. This appeal followed.

## Analysis

{¶ 7} Adkins asserts three assignments of error as follows:

THERE WAS INSUFFICIENT EVIDENCE TO CONVICT ADKINS OF MENACING AS THE EVIDENCE SHOWED HIS WIFE DID NOT BELIEVE AND WAS NOT FEARFUL OF HIS COMMENT.

ADKINS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED TO HIM UNDER THE CONSTITUTION DUE TO COUNSEL'S FAILURE TO CHALLENGE THE SUFFICIENCY OF THE EVIDENCE AND FAIL[URE] TO QUESTION A MATERIAL WITNESS AT TRIAL.

A MAXIMUM, CONSECUTIVE SENTENCE WAS EXCESSIVE IN THIS CASE AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

## Menacing Count

{¶ 8} As noted, the trial court appropriately concluded that the domestic violence and menacing counts were allied offenses of similar import, resulting in the counts being merged. The State elected to have Adkins convicted on the domestic violence count, with a conviction consisting of both a guilty finding and the imposition of a sentence. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. Adkins's assignment of error attacks the sufficiency and manifest weight of the evidence supporting the menacing count. But "[u]nder Ohio law, '[w]hen a trial court dispatches

with a count through merger, any error in the verdict is rendered harmless beyond a reasonable doubt.' " *State v. Montgomery*, 10th Dist. Franklin No. 13AP-512, 2014-Ohio-4354, ¶ 39, quoting *State v. Wolff*, 7th Dist. Mahoning No. 2007 MA 166, 2009-Ohio-2897, ¶ 70, citing *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990). *See also State v. Stargell*, 2016-Ohio-5653, 70 N.E.3d 1126, ¶ 57, 62 (2d Dist.). Given this, there is no need to address Adkins's sufficiency and manifest weight arguments with respect to menacing.[4] The first assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶ 9} Succinctly stated, to succeed on an ineffective assistance of counsel claim, a defendant must establish that his attorney performed deficiently and that the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed.2d 83 (1955). Assuming deficient performance, prejudice is gauged by whether "there is a reasonable probability that but for counsel's unprofessional errors the [trial's outcome] would have been different." *State v. Hudson*, 2d Dist. Montgomery Nos. 27022, 27027, 27028, 2017-Ohio-

---

[4] R.C. 2903.22 states in pertinent part that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person * * *." Given this language and Christa's testimony, a menacing conviction would have been supported by sufficient evidence. Further, our review of the record establishes that a menacing conviction would Prejudice, not have been against the manifest weight of the evidence.

2608, ¶ 22, citing *State v. Hale*. 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694 and *Bradley* at paragraph two of the syllabus. A failure as to either prong is fatal to a claim of ineffective assistance. *Strickland* at 697.

{¶ 10} Adkins's first ineffective assistance argument is that counsel did not effectively cross-examine Deputy Holly Risner. Risner responded to Christa's call regarding the two letters. Risner's brief testimony recounted her discussion with Christa, the fact that she called Adkins's mother, which conversation confirmed delivery of the letters, and that a decision was made to charge Adkins with two counts of violating a protection order. When he began the cross-examination, counsel seemed to believe that Risner was also involved in the domestic violence investigation. When counsel realized this was not so, the cross-examination was terminated.

{¶ 11} Given Risner's limited involvement, we cannot discern the strategic rationale for the cross-examination suggested by Adkins. Further, it cannot be concluded that a rigorous cross-examination would have, in probability, changed the trial's outcome.

{¶ 12} Adkins's second ineffective assistance claim relates to counsel's failure to make a Crim.R. 29 motion for acquittal. A Crim.R. 29 motion tests whether the State presented sufficient evidence to sustain a guilty verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). However, Adkins does not raise a sufficiency argument regarding the domestic relations or protection order charges. Upon our review of the record, viewing the evidence in a light most favorable to the prosecution, the State presented sufficient evidence that a rational trier of fact could have found the essential

elements of each charge proven beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Given this, Adkins's Crim.R. 29 ineffective assistance argument fails. Adkins's second assignment of error is overruled.

### Sentencing

{¶ 13} We outlined the standards pertaining to misdemeanor sentencing in *State v. Bakhshi*, 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, as follows:

> When sentencing for a misdemeanor offense, the trial court is guided by the "overriding purposes of misdemeanor sentencing," which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929 .21(A); *State v. Collins*, 2d Dist. Greene No. 2012-CA-2, 2012-Ohio-4969, ¶ 9. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). The sentence imposed must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B); *Collins* at ¶ 9.

> "A trial court is also required to consider the nature and circumstances of the offense, whether there was a history of persistent

criminal activity or character that reveals a substantial risk of the offender committing another offense, and numerous other factors related to the offender and the offense. R.C. 2929.22(B). However, in misdemeanor sentencing, there is no requirement that a trial court specifically state its reasons for imposing the sentence that it does on the record. *State v. Jackson*, 2d Dist. Montgomery No. 20819, 2005-Ohio-4521, ¶ 16, citing *State v. Harpster*, 5th Dist. Ashland No. 04COA061, 2005-Ohio-1046." *Collins* at ¶ 10. "If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary." *State v. Johnson*, 2d Dist. Greene No. 04-CA-126, 2005-Ohio-6826, ¶ 9.

*Bakhshi* at ¶ 47-48. Misdemeanor sentences are reviewed under an abuse of discretion standard. *State v. Peagler,* 2d Dist. Montgomery No. 24426, 2012-Ohio-737, ¶ 3. It is also noted a maximum jail term may not be imposed unless the defendant "commit[s] the worst form of the offense or upon [an] offender[ ] whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing future crime." R.C. 2929.22(C). However, a trial court is not required to make " 'on-the-record findings to support the imposition of a maximum sentence' for a misdemeanor." *State v. McClurg*, 2d Dist. Darke No. 2019-CA-15, 2020-Ohio-1144, ¶ 7, quoting *State v. Jackson*, 2d Dist. Montgomery No. 20819, 2005-Ohio-4521, ¶ 16.

{¶ 14} Before imposing the sentences, the trial court stated that it had reviewed the testimony and the PSI. The trial court, though not required to do so, explained its

sentencing rationale in some detail, including, as already discussed, the reasoning for the worst form of the offense conclusions. Though we may have reached different conclusions, we cannot conclude that the imposed sentence reflects an abuse of discretion. Adkins's third assignment of error is overruled.

## Conclusion

{¶ 15} The three assignments of error having been overruled, the judgment of the Clark County Municipal Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Marc T. Ross
Nicole Rutter-Hirth
Hon. Stephen A. Schumaker