[Cite as *State v. Scott*, 2023-Ohio-476.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-16 |
| | : | |
| v. | : | Trial Court Case Nos. 22CRB261A; |
| | : | 22CRB261B; 22CRB261C; |
| MINDY M. SCOTT | : | 22CRB261D |
| | : | |
| Appellant | : | (Criminal Appeal from Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 17, 2023

. . . . . . . . . . .

ROGER A. STEFFAN and MARK M. FEINSTEIN, Attorneys for Appellee

DONALD K. POND, JR., Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Mindy M. Scott, appeals from her conviction in the Champaign County Municipal Court after pleading no contest to four counts of vehicular manslaughter. Specifically, Scott contends that the trial court erred by imposing the maximum jail term for each of her offenses. For the reasons outlined below, the

judgments of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 19, 2022, the State filed complaints charging Scott with four counts of vehicular manslaughter in violation of R.C. 2903.06(A)(4), misdemeanors of the second degree, and one count of failing to maintain her lane of travel in violation of R.C. 4511.25(A), a minor misdemeanor.   The charges arose after Scott operated her vehicle left of center on U.S. Route 68 in Urbana Township and collided with an oncoming vehicle. The accident resulted in the death of four passengers in Scott's vehicle, 33-year-old Amber Whitt, 31-year-old Timothy Whitt, 24-year-old Robert Whitt, and 13-year-old I.B.

{¶ 3} On May 2, 2022, Scott entered a plea agreement and pled no contest to the four counts of vehicular manslaughter.   In exchange for Scott's no contest plea, the State agreed to remain silent during sentencing and to dismiss the count for failing to maintain her lane of travel.   The trial court accepted Scott's no contest plea and found her guilty of the four counts of vehicular manslaughter.   The trial court thereafter scheduled the matter for sentencing and ordered a presentence investigation ("PSI").

{¶ 4} On June 15, 2022, the trial court held Scott's sentencing hearing.   During the hearing, the trial heard statements from Scott's counsel, the decedents' family, and Scott.   After hearing those statements, and after indicating that it had reviewed the PSI, the trial court sentenced Scott to serve the maximum 90-day jail term for each of her vehicular manslaughter offenses.   In addition, the trial court ordered Scott to serve those jail terms consecutively for a total term of 360 days in jail.   The trial court also imposed a

$500 fine and a two-year license suspension on each count for a total fine of $2,000 and an aggregate license suspension of eight years. The trial court further ordered Scott to undergo a mental health evaluation and stated that the court would decide whether to suspend any of Scott's jail time after reviewing the evaluation. Thereafter, the trial court held a sentencing review hearing on September 15, 2022, during which it suspended 267 days of Scott's jail sentence, credited Scott for 93 days served, and placed Scott on community control.

{¶ 5} Scott now appeals from her sentence, raising a single assignment of error for review.

**Assignment of Error**

{¶ 6} Under her sole assignment of error, Scott contends that the trial court erred by imposing the maximum possible jail term for each of her vehicular manslaughter offenses. Specifically, Scott claims that the trial court's decision to impose the maximum jail term did not comply with R.C. 2929.22(C), which provides that a maximum jail term for a misdemeanor offense may only be imposed "upon offenders who commit the worst forms of the offense" or "upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing future crime." R.C. 2929.22(C). Scott asserts that she should not have been sentenced to the maximum jail term because the record establishes that she did not commit one of the worst forms of vehicular manslaughter and because she had no prior criminal offenses or traffic violations.

*Standard of Review*

**{¶ 7}** Appellate courts review misdemeanor sentences for an abuse of discretion. *State v. Johnson*, 2d Dist. Montgomery No. 29336, 2022-Ohio-1782, ¶ 14. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. Most instances of abuse of discretion occur when a trial court makes a decision that is unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* An abuse of discretion will not be found simply because the reviewing court would reach a different conclusion if it were deciding the issue de novo. *Id.*

*Misdemeanor Sentencing*

**{¶ 8}** When sentencing for a misdemeanor offense, the trial court is guided by the "overriding purposes of misdemeanor sentencing[,]" which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A); *State v. Bakhshi*, 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, ¶ 47. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). The sentence imposed must be "reasonably calculated to achieve the

two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B). "Unless a mandatory jail term or specific sanction is required to be imposed, a trial court has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing, which may include any sanction or combination of sanctions authorized." *State v. Horr*, 2d Dist. Montgomery No. 29391, 2022-Ohio-3160, ¶ 5, citing R.C. 2929.22(A).

{¶ 9} In determining the appropriate sentence for a misdemeanor, the trial court must consider seven factors listed under R.C. 2929.22(B)(1). *Id.* at ¶ 6. "Stated generally, those factors include the nature and circumstances of the offense(s); whether the offender has a history of persistent criminal activity and is likely to commit another offense; whether there is a substantial risk that the offender will be a danger to others; whether the victim's circumstances made the victim particularly vulnerable to the offense or made the impact of the offense more serious; and factors relating to the offender's military service, if any." *Johnson* at ¶ 11, citing R.C. 2929.22(B)(1)(a)-(g). The court may also consider "any other factors that are relevant to achieving the purposes and principles of sentencing set forth in [R.C. 2929.21.]" R.C. 2929.22(B)(2). In addition, the court must consider "any relevant oral or written statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor." R.C. 2929.22(D)(1).

{¶ 10} As relevant to this case, R.C. 2929.22(C) provides that the maximum jail

term for a misdemeanor may only be imposed "upon offenders who commit the worst forms of the offense" or "upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing future crime." R.C. 2929.22(C). Although R.C. 2929.22(C) identifies the circumstances under which a maximum sentence is permissible, it does not require the trial court to make any explicit findings. *State v. McClurg*, 2d Dist. Darke No. 2019-CA-15, 2020-Ohio-1144, ¶ 7, citing *State v. Jackson*, 2d Dist. Montgomery No. 20819, 2005-Ohio-4521, ¶ 16. *Accord State v. Adkins*, 2d Dist. Clark No. 2019-CA-45, 2020-Ohio-3296, ¶ 13. Indeed, the trial court is not required to make findings on the record with regard to any of the sentencing considerations under R.C. 2929.22. *Horr* at ¶ 7, citing *Jackson* at ¶ 13. "When a misdemeanor sentence is imposed within the statutory limits, reviewing courts will presume that the trial court considered the factors set forth in R.C. 2929.22 absent an affirmative showing to the contrary." *Id.*

{¶ 11} As previously discussed, Scott claims that the trial court's decision to impose the maximum jail term for each of her vehicular manslaughter offenses does not comply with the requirements of R.C. 2929.22(C) because: (1) she had no prior criminal offenses or traffic violations; and (2) the record failed to establish that she had committed one of the worst forms of vehicular manslaughter.

{¶ 12} Upon review, we find that the PSI establishes that Scott had no prior criminal offenses or traffic violations before the accident at issue. Therefore, the only basis on which the trial court could have imposed a maximum jail term was by concluding

that Scott had committed one of the worst forms of vehicular manslaughter.

**{¶ 13}** "The phrase 'worst forms of the offense' is not defined by statute and it is left primarily to the trial court's discretion to determine its meaning." *State v. Huff*, 7th Dist. Jefferson No. 98 JE 23, 2000 WL 1741901, *5 (Nov. 20, 2000), citing *State v. Mushrush*, 135 Ohio App.3d 99, 733 N.E.2d 252 (1st Dist.). That said, "[t]he General Assembly must have intended the phrase 'worst forms of the offense' to include many conceivable forms, because the plural 'forms' contemplates 'not just a single form of any offense that is the worst, but that more than one situation may be one of the worst forms of the offense.' " *Mushrush* at 110, quoting *State v. Patterson*, 4th Dist. Washington No. 97CA28, 1998 WL 720733, *4 (Sept. 21, 1998).

**{¶ 14}** Here, the PSI established that Scott caused the accident in question by hitting a vehicle in the oncoming traffic lane after she traveled left of center on the highway. The record is silent as to what specifically caused Scott to travel left of center. The PSI indicated that the traffic crash report cited "equipment failure" on the part of Scott's vehicle. However, following an investigation, the Champaign County Sheriff's Office determined that the accident was simply caused by Scott's traveling left of center on the highway. The PSI stated that the accident happened while Scott was driving in the rain and talking to one of her passengers about her son's birthday party. The PSI also indicated that Scott was not talking on the phone or texting while driving, and that her blood tested negative for drugs or alcohol at the time of the accident.

**{¶ 15}** The PSI further indicated that four out of the seven people in Scott's vehicle died at the scene of the collision. Scott and two of the children in her vehicle were injured

and taken to the hospital for medical treatment. The two occupants of the vehicle with which Scott collided were also injured and taken to the hospital for medical treatment. In addition to the great loss of life and the multiple physical injuries, the PSI established that several of the decedents' family members have struggled mentally and emotionally with the loss of their loved ones and that some of the decedents had young children who will never know their parent.

{¶ 16} The record also establishes that Scott was driving without any insurance at the time of the accident. At the sentencing hearing, Scott advised the trial court that she had never been insured in the five years that she had been driving, which the trial court found "unbelievable." Sentencing Tr. (May 2, 2022), p. 22. The PSI and the record of the sentencing hearing also indicated that some of the victims' family members had observed Scott continuing to drive uninsured after the accident. The PSI further established that several of the decedents' family members reported that Scott had shown no remorse for their loss and did not appear to take the matter seriously. The trial court also stated at the sentencing hearing that: "[W]e've had countless different hearings in here" and "[t]oday is the first day that I've seen you react or show any compassion whatsoever. I've never seen it until today." *Id.* at 23. The trial court also expressed concern with the fact that Scott had not taken any steps to receive counseling.

{¶ 17} While we acknowledge that loss of life occurs as a result of every instance of vehicular manslaughter, given that the offenses in this case also resulted in physical, mental, and emotional injuries to several people, and given Scott's longtime status as an uninsured driver and her lack of remorse, we do not find that it was unreasonable for the

trial court to find that Scott committed one of the worst forms of vehicular manslaughter. Accordingly, we cannot say that the trial court's decision to impose the maximum jail term for each offense was an abuse of discretion, especially since the trial court eventually suspending 267 days of Scott's 360-day jail sentence.

{¶ 18} For the foregoing reasons, Scott's sole assignment of error is overruled.

## Conclusion

{¶ 19} Having overruled Scott's assignment of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.