[Cite as *State v. Todd*, 2025-Ohio-2559.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Appellee, | : | | CASE NO. CA2024-07-046 |
| | : | | <u>OPINION AND</u> |
| - vs - | | | <u>JUDGMENT ENTRY</u> |
| | : | | 7/21/2025 |
| LAURA L. TODD, | : | | |
| Appellant. | : | | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR41117

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

# **O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Laura Todd appeals from her convictions for menacing by stalking in the Warren County Court of Common Pleas. For the reasons that follow, we affirm Todd's

convictions.

## I. Factual and Procedural Background

{¶ 2}   In October 2023, a Warren County grand jury indicted Todd on (1) two felony counts of violating a protection order, (2) one felony count of menacing by stalking, and (3) one misdemeanor count of menacing by stalking.

{¶ 3}   The indictment arose following allegations that Todd was stalking her ex-boyfriend ("the victim") after their relationship ended. Todd texted the victim numerous times in a harassing manner and appeared at times to know his location. The victim subsequently obtained a protection order against Todd and she stopped the harassing communications. However, Todd later learned that the victim took a job as a property manager at his apartment complex. And over a year later, during routine maintenance on the victim's vehicle, mechanics uncovered a tracking device. Two other tracking devices were subsequently found on the victim's second vehicle. The tracking devices were linked to Todd.

{¶ 4}   The matter proceeded to a bench trial. The following is a summary of the testimony relevant to this appeal.

## A. Evidence at Trial

### 1. The Victim's Testimony

{¶ 5}   The victim testified that he was employed as a deputy sheriff with the Warren County Sheriff's Office. The victim and Todd began a romantic relationship in 2019. In 2020, they moved in together, leasing a condominium for three years.

{¶ 6}   In August 2021, the relationship deteriorated. The victim suggested that he and Todd move on from one another. He assumed that he and Todd could be civil with one another, and he proposed that they would continue living in the same condominium and he would sleep in the condominium's spare bedroom. Todd disagreed with this plan

and wanted the victim to move out, immediately.

{¶ 7} The state introduced numerous text messages sent by Todd to the victim during the time of the breakup. The text messages are generally harassing and uncivil. Todd repeatedly demanded that the victim move out of the condominium. According to the victim, the nature of these texts was "open-ended threats" and "get out, or else." In this regard, in the text messages, Todd repeatedly threatened to release embarrassing information about the victim, including by posting the information on Facebook. At one point, Todd mentioned that she was contemplating buying a gun. The victim perceived this as a threat because Todd had never mentioned wanting a gun during their relationship.

{¶ 8} The victim stated that he tried not to respond to the victim's text communications, in order to avoid escalation. However, he did not block her text messages because he wanted to keep a record.

{¶ 9} Among the many texts that Todd sent to the victim were internet links to a number of apartments/residences where the victim could potentially move. Among those was a link to an apartment complex called Orchards of Landen.

{¶ 10} On August 22, 2021, some of the victim's coworkers took him out to a bar. He had been at the bar for three minutes when he received a text message from Todd stating, "Might want to get out of there, people know." The victim had no idea how Todd knew he was at the bar. He suspected a coworker had informed Todd. He began questioning his coworkers, which created animosity between him and his coworkers.

{¶ 11} The victim moved out of the condominium at the end of August 2021.

{¶ 12} On August 25, 2021, the victim petitioned the Warren County Court of Common Pleas for a domestic violence civil protection order against Todd. The victim testified that he did so because Todd's threats against him had progressed. Specifically,

Todd posted information about him online. Todd had also appeared at the Warren County Sheriff's Office and requested the victim's personnel file. On August 25, 2021, the court issued an ex parte temporary protection order, which was in effect for one year, or until August 25, 2022.

{¶ 13} Todd ceased all communication with the victim after the issuance of the protection order. However, in December 2021, Todd sent a letter to the Warren County Sheriff's Office alleging that the victim had engaged in improper conduct while performing his duties as a deputy sheriff. As a result of Todd's letter and a subsequent investigation by the sheriff's department, the victim was reprimanded and had to take counseling.

{¶ 14} The victim testified that Todd's actions to this point had caused him "more stress at the work place, more stress at home" and loss of sleep. He was also concerned about the safety of his three children.

{¶ 15} The parties appeared with counsel for several hearings on the protection order, but the matter was repeatedly continued.

{¶ 16} The victim testified that in November 2021, he moved into a residence located at the Orchards of Landen. Upon moving in, he took a job as the "courtesy officer." In this role, the victim would patrol the grounds and would be available for resident concerns, such as noise complaints.

{¶ 17} In January 2022, the victim was patrolling Orchards at Landen. He stopped by the management office and found that the doors were locked. This was unusual; it was the first time that he had ever encountered locked doors at the management office. Outside the office, he noticed a white Jeep that appeared similar to Todd's vehicle. He ultimately ran the plate and found that the Jeep was Todd's. He contacted his supervisor and let her know that Todd's jeep was on site and the protection order was still in effect.

{¶ 18} That night he went home and was concerned enough to clear his apartment

with his gun. He could not sleep that night. He later asked for permission to install security cameras outside his residence.

{¶ 19} The victim's protection order against Todd expired on August 25, 2022. The court never held a full hearing on the petition. The victim stated that he allowed the petition to expire on the advice of counsel.

{¶ 20} In December 2022, the victim took his police cruiser into the sheriff's garage for routine maintenance. He was subsequently informed that mechanics had located a tracking device on his cruiser. He then brought his personal vehicle to the garage and had it inspected. Mechanics located a second tracking device. Later, a third tracking device was found on the victim's personal vehicle after he took it to a car dealership for maintenance.

{¶ 21} The victim testified that after the discovery of the tracking devices, he was constantly looking over his shoulder. He was concerned for the safety of his children and informed their mother of what was going on with Todd.

**2. Sergeant John Smith's Testimony**

{¶ 22} Sergeant John Smith testified that he was assigned to criminal investigations with the Warren County Sheriff's Office. On December 21, 2022 he began an investigation after tracking devices were found on the victim's vehicle. He issued grand jury subpoenas to the manufacturer of the tracking devices and was able to identify Todd as the purchaser of the devices. He discovered that the email address associated with the purchase was Todd's mother's email address. Sergeant Smith was also able to connect internet protocol addresses associated with Todd's residence and workplace to logins at the manufacturer's tracking website.

{¶ 23} Sergeant Smith testified that all three trackers were turned on before the issuance of the protection order, two in July 2021 and one in August 2021. Sergeant Smith

further testified that two of the trackers went offline *before* the issuance of the protection order and the last tracker went offline on September 6, 2021, which was the same date of the last recorded login on the tracking website, which closed the account.

{¶ 24} Sergeant Smith's investigation revealed that Todd had applied for a job at Orchards at Landen prior to the victim moving to that apartment. But she started working there on December 1, 2021, the month after the victim moved to the apartment.

**B. The Trial Court's Decision**

{¶ 25} The trial court found Todd not guilty of the two felony counts of violating a protection order. The court found that the state had not presented proof beyond a reasonable doubt that Todd was served with the protection order, or issued it by a judge, magistrate, or law enforcement officer.

{¶ 26} The court found Todd guilty of two counts of menacing by stalking, each a misdemeanor of the first degree.[1] The court found that the state had established a pattern of conduct to support the two charges between August 2021 and January 2022. The court stated that it found beyond a reasonable doubt that Todd knowingly caused the victim to believe that she would cause him physical harm. In this regard, the court indicated it had read Todd's text messages to the victim, and noted that Todd had discussed a gun in these texts. The court also noted the incident where Todd informed the victim via text that she knew he was at a bar.

{¶ 27} After finding Todd guilty, the court proceeded immediately to sentencing. The court heard argument in mitigation and a statement from Todd in allocution. The court

---

1. The state originally charged Count Two of the indictment as menacing by stalking, a felony of the fourth degree, based on the additional allegations that Todd was the subject of a protection order at the time she was engaged in the menacing by stalking offense. The court found that Todd was not subject to a protection order at the time that she made physical threats against the victim and thus declined to make that additional finding with respect to Count Two. Thus, the court modified the charging level on Count Two to a first-degree misdeanor.

then indicated that Todd was not amenable to community control. The court imposed a sentence of 180 days in county jail, on each count, to be served concurrently.

{¶ 28} Todd appealed, raising two assignments of error.

## II. Law and Analysis

### A. Sufficiency and Weight of the Evidence

{¶ 29} Todd's first assignment of error states:

THE TRIAL COURT'S CONVICTION IS NOT BASED UPON LEGALLY SUFFICIENT EVIDENCE AND [IS] AGAINST THE WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL.

{¶ 30} Todd argues that the state submitted insufficient evidence that she threatened the victim with physical harm. Todd contends that the trial court improperly relied on the text message about her contemplating a gun purchase and the text informing the victim that she was aware he was at a bar. Todd argues there was no explicit threat made in these two communications and that the victim's "'reading between the lines' testimony is not sufficient to support" her convictions. For the same reasons, Todd argues that her conviction is against the manifest weight of the evidence.

### 1. Law on Sufficiency and Weight of the Evidence

{¶ 31} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31 (12th Dist.), citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} "A manifest weight of the evidence challenge examines the 'inclination of

- 7 -

the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *Madden* at ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 33} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 34} "[A]lthough the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

### 2. Menacing by Stalking

{¶ 35} The trial court convicted Todd of two counts of menacing by stalking, in violation of R.C. 2903.211(A)(1). That statute provides, in relevant part:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other

person.

{¶ 36} A pattern of conduct requires only two or more actions closely related in time. R.C. 2903.211(D)(1). In determining what constitutes a pattern of conduct, a trial court must take every action of the respondent into consideration even if some of the actions, considered in isolation, do not seem particularly threatening. *Bartells v. Bertel*, 2018-Ohio-21, ¶ 56 (12th Dist.).

{¶ 37} Because Todd does not argue that the state's evidence was insufficient or against the weight of the evidence with regard to the "pattern of conduct" element of the menacing by stalking offense, we will not specifically address this element of the offenses. We will instead focus our analysis on the "knowingly cause another person to believe that the offender will cause physical harm to the other person" element of the offense, which is the focus of Todd's argument.

### 3. Analysis

{¶ 38} Upon a thorough review of the record, we find that Todd's convictions of menacing by stalking were supported by sufficient evidence to prove that Todd knowingly caused the victim to believe that Todd would cause the victim physical harm. We also find that the convictions were not against the manifest weight of the evidence.

{¶ 39} The record reflects that Todd continuously communicated with the victim in a harassing manner following the breakup of their romantic relationship. Todd demanded that the victim leave the condominium and threatened to embarrass the victim on social media if he did not do so. In this midst of these harassing communications, Todd stated that she was contemplating purchasing a gun. The victim testified that Todd had never mentioned a desire to purchase a gun during their relationship and he perceived it as a threat. In the context of the harassment, demands, and threatening communications, the trial court could certainly conclude that the victim was implicitly threatening the victim's

physical safety when discussing her potential gun purchase. Contrary to Todd's argument, the state was not required prove that she made an explicit threat to harm the victim. "Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211." *Bartells*, 2018-Ohio-21 at ¶ 56.

{¶ 40} Although unknown to the victim at the time, Todd was in fact monitoring the victim's location using GPS trackers. Todd used this tracking information to alert the victim that she was aware of his location, a bar, and that he should be concerned and that "people know." The factfinder could certainly conclude that Todd's purpose in texting this to the victim was to imply that she could determine his location without his knowledge and that other "people" knew his location. In the overall context of the situation, Todd would know that providing this information to the victim would imply a threat to the victim's physical safety from Todd or other "people."

{¶ 41} The victim testified that he was always looking over his shoulder due to Todd's behavior. He was concerned for his own safety as well as his three children. When the victim spotted Todd's vehicle parked in his apartment complex, he cleared his residence with a gun and could not sleep that evening. He also testified that he asked the apartment complex for permission to place security cameras outside his apartment.

{¶ 42} On these facts, we conclude that the state presented sufficient evidence that Todd knowingly caused the victim to believe that the Todd would cause the victim physical harm. For the same reasons, we conclude that Todd's conviction was not against the manifest weight of the evidence. The record contains competent, credible evidence that Todd engaged in a pattern of conduct, closely related in time, with intent to cause the victim mental distress, and knowingly caused the victim to believe that she was going to cause him physical harm.

{¶ 43} We overrule Todd's first assignment of error.

**B. Sentencing**

{¶ 44} Todd's second assignment of error states:

THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM SENTENCE OF 180 DAYS IS AN ABUSE OF DISCRETION.

{¶ 45} Todd contends that the trial court abused its discretion in imposing sentence in three ways. Todd argues that the court abused its discretion when it (1) considered the felony sentencing factors of R.C. 2929.11 and 2929.12 in imposing her sentence; (2) imposed a maximum sentence; and (3) imposed community control on the judgment entry of sentence. We will address each argument in turn, after first addressing the applicable standard of review.

**1. Standard of Review – Misdemeanor Sentencing**

{¶ 46} We review a trial court's sentence on misdemeanor offenses under the abuse of discretion standard. *State v. Batchelor*, 2024-Ohio-3232, ¶ 9 (12th Dist.) An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id*.

**2. Consideration of Felony Sentencing Factors**

{¶ 47} As stated above, Todd argues that the trial court erred when it considered the felony sentencing factors set forth in R.C. 2929.11 and 2929.12 when it imposed sentence.

**a. Applicable Law**

{¶ 48} Pursuant to R.C. 2929.21 and 2929.22, trial courts have broad discretion when determining what sentence is appropriate for each given misdemeanor case. *State v. Kinsworthy*, 2014-Ohio-2238, ¶ 30 (12th Dist.). When determining the appropriate sentence, the trial court must be guided by the purposes of misdemeanor sentencing which are "to protect the public from future crime by the offender and others and to punish

- 11 -

the offender." R.C. 2929.21(A). The trial court must also consider the factors listed in R.C. 2929.22(B)(1) and may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(3).

{¶ 49} "Although it is preferable that the trial court affirmatively state on the record that it has considered the criteria set forth in R.C. 2929.21 and R.C. 2929.22, the statute does not mandate that the record state that the trial court considered the applicable statutory factors." *Kinsworthy* at ¶ 30. "A trial court is presumed to have considered the statutory factors when the sentence is 'within the statutory limits and there is no affirmative showing that the trial court failed to do so.'" *Id.*, quoting *State v. Collins*, 2005-Ohio-4755, ¶ 12 (3d Dist.).

### b. Analysis

{¶ 50} At the sentencing hearing, the court heard argument in mitigation from Todd's counsel. The court also accepted a statement in allocution from Todd. She told the court that she was "apologetic for any contact I made with him." When asked for clarification of what specifically she was sorry for, Todd stated she was sorry for affecting the victim's "wife in anyway. For reacting to a break up, to being emotional, to causing any harm to anyone. That has never been my intent."

{¶ 51} The court then stated that while Todd's conduct did not rise to the level of felony conduct, the court did not believe that "it makes sense" to try to supervise Todd on probation and that "This is just a good old fashion[ed] punishment case." The court announced it was imposing a sentence of 180 days in the county jail.

{¶ 52} The court did not specifically reference the criteria set forth in R.C. 2929.21 and 2929.22. However, as stated above, the law does not require the court to refer to these statues when imposing sentence. *Kinsworthy*, 2014-Ohio-2238 at ¶ 30. And the court sentenced Todd within the statutory range of the two first-degree misdemeanors of

which she was convicted. R.C. 2929.24(A)(1). Based on this fact and based on the court's comments at sentencing, we can presume that the court properly considered the applicable statutory factors in R.C. 2929.21 and 2929.22. *Kinsworthy* at *id.*

{¶ 53} The court's sentencing entry does refer to its consideration of the purposes and principals of R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12. That the court referred to these felony sentencing statutes in sentencing Todd for misdemeanors may have been a clerical error. However, even if the court had mistakenly considered those felony factors, we do not find reversible error.

{¶ 54} The guidelines for misdemeanor sentencing are substantively similar to those applied in felony sentencing. *State v. Inman*, 2021-Ohio-1573, ¶ 8 (4th Dist.); *S. Euclid v. Bickerstaff*, 2019-Ohio-2223, ¶ 7 (8th Dist.). Both R.C. 2929.11 and 2929.21 provide that a court "shall be guided by the overriding purposes" of felony and misdemeanor sentencing, respectively, which are "to protect the public from future crime by the offender and others" and "to punish the offender." R.C. 2929.11(A) and 2929.21(A).

{¶ 55} In *State v. Inman*, 2021-Ohio-1573 (4th Dist.), the court of appeals rejected a similar argument where the court's misdemeanor sentencing entry incorrectly referred to the felony sentencing guidelines. *Id*. at ¶ 8. The Fourth District Court of Appeals noted the similarities between the guidelines for both misdemeanor and felony sentencing. *Id*. The court of appeals further found that when the trial court's sentence was within the statutory limit, a reviewing court will presume that the trial judge followed the correct standards, absent a showing to the contrary. *Id*. The same analysis applies here.

{¶ 56} However, Todd contends that the considerations of misdemeanor and felony sentencing statutes differ in such a manner that we should presume prejudice.

{¶ 57} First, Todd points out that while R.C. 2929.11 includes consideration of the desire to rehabilitate the offender, R.C. 2929.21 does not include this consideration. However, based on the court's comments, the court did not sentence Todd based on her need for rehabilitation. Instead, the court premised its sentence upon punishing Todd (stating "This is just a good old fashion[ed] punishment case"). Punishment is a proper consideration for misdemeanor sentencing under R.C. 2929.21(A).

{¶ 58} Second, Todd argues that R.C. 2929.12 contains several sentencing factors that do not appear in R.C. 2929.22(B)(1). These factors include: the physical or mental harm to the victim; the offender's relationship to the victim; whether the victim contributed to the offense; and whether the offender shows any remorse. However, while these factors are not specifically discussed in R.C. 2929.22, that statute also provides that the court may consider "any other factors that are relevant to achieving the purposes and principles of sentencing set forth in [R.C. 2929.21] . . . ." R.C. 2929.22(B)(3). The R.C. 2929.12 factors discussed above are all potentially relevant considerations in determining the need to "protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). As such, to the extent that the court considered these factors, Todd has not demonstrated prejudice.

{¶ 59} Todd has not presented any evidence showing that the trial court failed to consider the applicable misdemeanor guidelines when imposing sentence. In addition, we note that the court's sentencing entry also indicates that it considered "all other relevant sentencing statutes." Based on the foregoing analysis, including the fact that the court imposed a sentence within the statutory range, we can presume that the court properly considered the R.C. 2929.21 and 2929.22 factors and we find no prejudice resulting from the court's consideration of the felony sentencing factors. Todd's argument regarding the trial court's consideration of felony sentencing factors is without merit.

**3. Imposition of Maximum Sentence**

{¶ 60} Todd next argues that the court violated R.C. 2929.22(C) by imposing a maximum sentence. R.C. 2929.22(C) requires a trial court to consider the appropriateness of community control before imposing a jail term. The court may impose the longest jail term authorized on offenders,

> who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future criminal offense.

R.C. 2929.22(C).

{¶ 61} The trial court is not required to state on the record its reasons for the sentence it imposes, including any sentencing considerations under R.C. 2929.22. *See Kinsworthy*, 2014-Ohio-2238 at ¶ 30; *State v. Jones*, 2024-Ohio-4604, ¶ 21 (2d Dist.); *State v. Scott*, 2023-Ohio-476, ¶ 10 (2d Dist.).

{¶ 62} Todd argues that she had no prior criminal record and the second consideration mentioned above is irrelevant. Todd instead argues that her conduct in the underlying case did not constitute the "worst forms of the offense."

{¶ 63} The phrase "worst forms of the offense" is not defined in R.C. 2929.22 and therefore the trial court's determination of whether a particular offense is the "worst" form of the offense involves both a matter of discretion and consideration of the various misdemeanor sentencing factors. *See State v. Mushrush*, 135 Ohio App.3d 99, 110 (1st Dist. 1999) (analyzing "worst forms of the offense" in the context of felony sentencing); *Scott*, 2023-Ohio-476 at ¶ 13 (same, in misdemeanor sentencing).

{¶ 64} In the case at bar, we cannot say that the court's sentence constituted an abuse of discretion. First and foremost, we note that the trial court imposed *concurrent* sentences. Thus, the court *did not* impose the longest jail term authorized for Todd's

- 15 -

offenses and the court would not have been required to find that Todd's offenses were the "worst forms of the offense" under R.C. 2929.22(C). Second, even if we assume that Todd received the longest jail term, Todd engaged in a pattern of conduct wherein she infiltrated every aspect of the victim's life. She posted about the victim online and contacted the victim's employer, resulting in his facing discipline. She sent the victim harassing communications designed to cause the victim to suffer mental distress and to believe that she would cause him physical harm. She obtained employment at his new apartment complex after suggesting he move there. In addition, Todd placed GPS tracking devices on two of the victim's vehicle, including his sheriff's patrol vehicle. Using this information, Todd messaged the victim to warn him that she knew he was at a bar.

{¶ 65} Todd herself offered very little of substance in way of mitigation. Todd's apology was generic and self-centered (apologizing for how she reacted to a break up). Under these circumstances, the trial court's imposition of a 180-day sentence was not unreasonable, arbitrary, or unconscionable, and so the trial court did not abuse its discretion. We find no merit to Todd's "maximum sentence" argument.

**4. Imposition of Community Control in Sentencing Entry**

{¶ 66} In her final argument, Todd contends that the trial court erred by imposing community control in the sentencing entry while simultaneously imposing a jail term in the same sentencing entry. Todd notes that the court specifically did not impose community control at the sentencing hearing. Todd requests that this court vacate the trial court's imposition of community control.

{¶ 67} Upon our review, the court appears to have mistakenly checked certain boxes next to form language on the sentencing entry indicating that the court was imposing community control. Imperfect sentencing entries can be corrected through a nunc pro tunc entry. *State v. Tolliver*, 2025-Ohio-132, ¶ 7 (12th Dist.). Under Crim.R. 36,

"[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." The purpose of a nunc pro tunc entry under Crim.R. 36 is to record actions that were actually taken but not correctly recorded. *State v. Rodriguez*, 2024-Ohio-5632, ¶ 23 (12th Dist.).

{¶ 68} We find that there is a clerical error in the sentencing entry that should be resolved with the trial court issuing a nunc pro tunc entry clarifying the order with respect to the lack of imposition of community control.

{¶ 69} We sustain in part and overrule in part Todd's second assignment of error.

### III. Conclusion

{¶ 70} Todd's convictions for menacing by stalking are supported by sufficient evidence and the greater weight of the evidence. With the exception of the clerical error regarding community control, Todd has not demonstrated error in the trial court's sentence.

{¶ 71} Judgment affirmed in part, reversed in part, and the matter is remanded for the limited purpose of issuing a nunc pro tunc sentencing entry.

HENDRICKSON and PIPER, JJ., concur.

## JUDGMENT ENTRY

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the sentencing entry only, and this cause is remanded for the limited purpose of issuing a nunc pro tunc entry consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 75% to appellant and 25% to appellee.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Robin N. Piper, Judge